**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terri McKelvy, | No. CV-20-01977-PHX-GMS |
| Plaintiff, | **\*AMENDED ORDER** |
| v. | |
| ASARCO LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendant ASARCO LLC's Motion for Summary Judgment (Doc. 57).  For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff, Terri McKelvy, was hired as a Maintenance Clerk at ASARCO's Ray Mine facility in Kearny, Arizona, on October 14, 2013.  Five years later, in 2018, she was promoted to Maintenance Planner for ASARCO's Maintenance Department.  While Plaintiff worked in this position, she was supervised by Gabriel Duran (2019–February 2020) and Esther Romero (February 2020–April 2021).  Plaintiff alleges that throughout her time at ASARCO, she was subjected to various kinds of sex-based discrimination that ultimately resulted in her resignation from the company.  During the period when the alleged discrimination occurred, Plaintiff was the only female Maintenance Planner in her group.

Plaintiff claims that she worked as Maintenance Planner under Mr. Duran's supervision without incident until Dean Alonzo, Mr. Duran's supervisor, told Mr. Duran to terminate her, apparently without explanation. Mr. Duran declined to terminate Plaintiff. During Mr. Duran's term as Plaintiff's supervisor, there was a copper strike at the mine, and employees were allowed to work overtime. Every male Maintenance Planner that requested overtime received at least one overtime shift. However, Mr. Alonzo denied the Plaintiff's request without apparent explanation and she never worked overtime. Defendant claims that there were legitimate reasons for denying her requests. Nevertheless, Mr. Duran testified that he witnessed Plaintiff being treated differently from her male co-workers during his time as her supervisor. He also testified that he believed Mr. Alonzo's rejection of Plaintiff's overtime request demonstrated how she was treated differently from her peers.

The alleged discrimination worsened when Ms. Romero took over as Plaintiff's supervisor. According to Plaintiff, Ms. Romero would constantly question Plaintiff's work and knowledge in private and in front of others. Plaintiff alleges that Ms. Romero constantly interrupted her, occasionally refused to answer her questions, sometimes glared at her when she would speak up during meetings, and routinely refused to socialize with her. The male Maintenance Planners were not subjected to similar treatment, and Ms. Romero would "talk and mess around with all of the other male planners, but she wouldn't talk to" Plaintiff. (Doc. 62-1 at 10.) Although Plaintiff admits that Ms. Romero was sometimes critical of her male co-workers, she alleges that Ms. Romero would not reprimand them as harshly for perceived mistakes. Overall, Plaintiff's position is that "Romero treated [Plaintiff] horrible compared to everyone else." (Doc. 62-1 at 15.)

Further, Plaintiff alleges that she was singled out for unsafe work assignments that no one else was asked to perform and were not within her explicit job responsibilities. She notes that Ms. Romero asked her to "measure pipes that [were] operational and leaking and twenty to thirty feet in the air with no catwalk, staircase, or other access to them," (Doc. 62-1 at 11), that were at a height that put them outside a Maintenance Planner's

responsibilities.  After consulting with various people on how to handle the assignment, Plaintiff hired a vendor to assess the pipes.  Upon seeing the vendor, Ms. Romero dismissed it and instructed Plaintiff to measure the pipes herself.

On March 4, 2020, Plaintiff met with Mr. Alonzo, then Ms. Romero's supervisor, to complain about the treatment she was receiving from Ms. Romero.  She told Mr. Alonzo that "Romero was abusing her and reported the discriminatory conduct" to Mr. Alonzo, allegedly explaining that she would rather be fired if she was not doing her job than continue to be put through "the mental abuse [Ms. Romero] is doing."  (Doc. 62-1 at 12.) Mr. Alonzo told Plaintiff he would speak with Ms. Romero.  Immediately after that meeting, Plaintiff intended to file a formal report with human resources ("HR").  But after stopping briefly to assist some co-workers with a task, she received an email from Ms. Romero instructing her to come to HR for a meeting among Plaintiff, Ms. Romero, and Mr. Tony McCauley, ASARCO's HR manager.

In the meeting, Mr. McCauley gave Plaintiff critical feedback about her job performance for the last two years.  Plaintiff was surprised and asked for documentation or evidence to support his feedback, but Mr. McCauley could not offer any.  Then, Ms. Romero gave Plaintiff a performance improvement plan ("PIP") that listed areas of concern about Plaintiff's work performance.  Plaintiff alleges that the listed concerns were fabricated, misleading, and often irrelevant to her role as a Maintenance Planner.  As a result of Ms. Romero's treatment, Plaintiff claims she experienced a significant emotional toll and had to take time off of work to seek treatment for her accompanying symptoms.

In addition to the events described above, Plaintiff claims she was not given raises after August 2019, which were allegedly promised to her when she accepted her Maintenance Planner role.  She also notes that Ms. Romero had a tattoo of a naked woman on her arm that made her uncomfortable but did not bother the male Maintenance Planners.

The above-mentioned events gave rise to Plaintiff's claims for sex-based disparate treatment discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964.  After discovery, defendant ASARCO moved for summary

1     judgment on each claim.

2     **DISCUSSION**

3     **I.    Legal Standard**

4     Summary judgment is appropriate if the evidence, viewed in the light most favorable

5 to the nonmoving party, shows "that there is no genuine issue as to any material fact and

6 that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Substantive

7 law determines which facts are material, and "[o]nly disputes over facts that might affect

8 the outcome of the suit under the governing law will properly preclude the entry of

9 summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see*

10 *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994). The dispute must

11 also be genuine, i.e., the evidence must be "such that a reasonable jury could return a

12 verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

13     The moving party "bears the initial responsibility of informing the district court of

14 the basis for its motion and identifying those portions of [the record] which it believes

15 demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

16 U.S. 317, 323 (1986). The moving party, however, need not disprove matters on which

17 the opponent has the burden of proof at trial. *Id.* at 323. In such cases, the burden is on

18 the nonmoving party to establish a genuine issue of material fact. *Id.* at 322–23. The

19 nonmoving party "may not rest upon the mere allegations or denials of [the party's]

20 pleadings, but . . . must set forth specific facts showing that there is a genuine issue for

21 trial." Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

22 U.S. 574, 586–87 (1986).

23     **II.    Claim One: Disparate Treatment Discrimination**

24     To present a prima facie case for disparate treatment under Title VII, Plaintiff must

25 show that she (1) belongs to a protected class, (2) was qualified for the position, (3) was

26 subjected to an adverse employment action, and (4) similarly situated employees were

27 treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973);

28 *see also Vasquez v. County of Los Angeles.*, 349 F.3d 634, 640 n. 5 (9th Cir.2003). "The

requisite degree of proof necessary to establish a prima facie case for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). The plaintiff need only offer evidence that "gives rise to an inference of unlawful discrimination." *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir.1985). Such evidence can be direct or circumstantial. *Opara v. Yellen*, 57 F.4th 709, 721 (9th Cir. 2023). Here, ASARCO concedes that, as a woman, Plaintiff is a member of a protected class.

### 1. Prima Facie Case

#### a. Qualified for Her Position

First, Defendant does not offer a legal basis to support its argument that Plaintiff was not "qualified" for her position. Defendant does not list a Ninth Circuit definition of what makes a person qualified for their position, nor does it analogize Plaintiff's qualifications to any explanatory case law. Instead, it presents solely fact-based arguments to cast doubt on Plaintiff's qualifications, which Plaintiff contests with competing evidence, including her lack of a disciplinary record and Mr. Duran's testimony that she was qualified for her position. The jury must weigh these arguments.

#### b. Adverse Employment Action

Second, "an adverse employment action is one that materially affect[s] the compensation, terms, conditions, or privileges of . . . employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal punctuation omitted). In the Ninth Circuit, discriminatory overtime practices are adverse employment actions. *Id.* Plaintiff has introduced the list Mr. Alonzo produced with the names of employees who were permitted to work overtime, which included similarly situated male employees at Plaintiff's employment level but omitted Plaintiff. This is enough circumstantial evidence for a reasonable jury to find that Plaintiff was subjected to discriminatory overtime, i.e., an adverse employment action. Although Defendant argues that Plaintiff cannot raise this point for the first time in response to a motion for summary judgment, it is mistaken. While

a "district court need not consider arguments raised for the first time" in a responsive motion, it is not precluded from doing so. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Because the denial of overtime pay is sufficient to overcome Defendant's summary burden of establishing that Plaintiff cannot prove an adverse action as a matter of law, the Court does not address the other adverse actions Plaintiff alleges.

### c. Similarly Situated Employees

Third, there is no dispute that Plaintiff was a Maintenance Planner and that the other Maintenance Planners were all "similarly situated" male employees. (Doc. 58 at 2.) Still, Defendant argues that Plaintiff cannot show that she was treated differently from male Maintenance Planners under the supervision of either Mr. Duran or Ms. Romero and in general. However, Plaintiff has introduced several pieces of evidence that suggest a reasonable jury could reject that argument. For example, Plaintiff introduced testimony from Mr. Duran that suggests she was treated differently from her male coworkers, and the above testimony from Mr. Attaway further creates an issue of fact. Further, as described above, her evidence about overtime pay also suggests that she was treated differently from her similarly situated male coworkers.

Accordingly, Plaintiff has sufficiently established a prima facie case of discrimination.

### 2. *McDonnell Douglas*

Because Plaintiff has established a prima facie case of discrimination, the *McDonnell Douglas* framework applies. Specifically, ASARCO bears the burden of production to articulate some legitimate, nondiscriminatory reason for the challenged action. *McDonnell Douglas*, 411 U.S. at 802. Should ASARCO meet this burden, Plaintiff must show that the stated reason was not the employer's true reason but merely a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08 (1993).

In its Motion, ASARCO argues that its negative decisions were justified by Plaintiff's work performance. For example, "based upon her own observations of McKelvy's performance, and with the benefit of information provided by her predecessor and others, all of which was confirmed," Ms. Romero allegedly "determined McKelvy was

falling short of expectations, and that such shortcomings could not remain unaddressed." (Doc. 57 at 12.)  Defendant does not speak directly to the denial of overtime pay but given that ASARCO's "burden of rebuttal" for offering a nondiscriminatory reason "is exceedingly light," its statements that its decisions were generally justified are enough to shift the burden back to Plaintiff to show that this reason is pretextual.  *Perryman*, 698 F.2d at 1142 (11th Cir. 1983).

 "[P]laintiff can prove pretext in multiple ways, either: (1) directly, by showing that unlawful discrimination more likely [than not] motivated the employer; (2) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable; or via a combination of the[se] two kinds of evidence."  *Opara*, 57 F.4th at 723 (internal punctuation omitted).  Here, Plaintiff suggests that "Alonzo, Romero, and McCauley wanted to fire McKelvy without any legitimate basis," but "[w]hen it became apparent that they would be unable to do so, they then fabricated a rationale and continue to target and harass McKelvy."  (Doc. 62 at 14.) She seeks to prove this indirectly by pointing to Mr. Duran's testimony where he described a conversation with Mr. Alonzo, in which Mr. Alonzo failed to provide a reason when Mr. Duran asked why Mr. Alonzo wanted to terminate Plaintiff.  Further, she offers evidence that "she had never been written up or received any disciplinary action and asked [a human resources representative] for any evidence supporting the allegations" against her, but "he was unable to support" them.  (*Id.*)  At this stage, such evidence creates fact questions about whether Defendant's denial of Plaintiff's overtime pay was pretextual.

Accordingly, ASARCO's motion for summary judgment is denied as to Plaintiff's disparate treatment discrimination claim.

### III.   Claim Two: Hostile Work Environment

To establish a prima facie case of a hostile work environment under Title VII, a plaintiff must show (1) she was subjected to verbal or physical conduct because of her sex; "(2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work

environment." *Vasquez v. County of L.A.*, 349 F.3d 634, 642 (9th Cir.2003).  The work environment "must be both objectively and subjectively offensive, one that a reasonable [woman] would find hostile or abusive, and one that the [plaintiff] in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).  Defendant's motion is granted as to Plaintiff's hostile work environment claim because the conduct Plaintiff describes, even considered in the light most favorable to her, is not severe or pervasive enough to establish a hostile work environment within the meaning of Title VII.

To determine whether conduct is severe or pervasive within the meaning of Title VII, courts look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).  "The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct."  *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000).  Under similar circumstances, courts in this circuit have noted that "[n]on-sexually explicit conduct alone is insufficient to satisfy the 'severe or pervasive' requirement." *Vega v. Honeywell Int'l, Inc.*, No. 3:19-CV-0663 W (BGS), 2021 WL 1226483, at *12 (S.D. Cal. Mar. 30, 2021).   "Instead, such conduct must be accompanied by other acts that are more clearly sex and gender-motivated, such as racial slurs, sexist remarks, racially or sexually derogatory acts, physical touching, etc." *Id.*

Here, Plaintiff alleges that Ms. Romero gave her a particularly difficult work assignment on at least one occasion, continually cut her off when she was speaking, ignored her, and glared at her in a meeting after she asked a question.  She further alleges that Ms. Romero's conduct negatively impacted her ability to do her job and, that Ms. Romero had the tattoo of a naked woman on her arm.  Plaintiff does not, however, allege that in the course of this conduct (or any other alleged conduct) that Ms. Romero (or anyone else) ever made comments about Plaintiff's gender or took specific actions because of her sex. Instead, Plaintiff relies on testimony from herself and Mr. Duran that she was treated more

poorly than her similarly situated male coworkers.

Although that testimony might support her disparate treatment discrimination claim, courts require significantly more severe and pervasive conduct to establish a hostile work environment.  *See, e.g., Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (finding severe conduct where a male supervisor told his female subordinate to wear shorter skirts, asked her out for drinks, asked her if she ever imagined having sex with him, asked her to drink wine with him in a hot tub, and followed her into a bathroom); *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1064 (9th Cir. 2002) (finding severe conduct where, over two years, a homosexual butler's coworkers would whistle and blow kisses at him, tell him crude jokes, call him diminutive names, caress him, and put their fingers in his anus through his clothing); *Brooks v. City of San Mateo*, 229 F.3d 917, 925 (9th Cir. 2000) (citing *Al-Dabbagh v. Greenpeace, Inc.*, 873 F. Supp. 1105, 1108 (N.D. Ill. 1994)) (finding severe harassment where a male shift supervisor slapped a female employee, tore off her shirt, beat her, hit her on the head with a radio, choked her with a phone cord and ultimately forced her to have sex with him). Even crediting Plaintiff's description of the nature of her treatment, it is not, without more, sufficiently pervasive or serious to objectively constitute sexual harassment

Accordingly, Defendant's motion is granted as to Plaintiff's hostile work environment claim.

## IV.    Claim Three: Retaliation

Title VII prohibits retaliation against employees because they have opposed an unlawful employment practice. 42 U.S.C. § 2000e–3(a).  "To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  If Plaintiff establishes a prima facie case, the burden-shifting framework described above applies.  *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464–65 (9th Cir. 1994).  However, the Court need not address that framework because

1    Plaintiff cannot establish an adverse action that supports a retaliation claim.

2         Plaintiff alleges that she engaged in protected activity when she approached Mr.

3    Alonzo "to report the discriminatory behavior because she felt she was being targeted and

4    abused by Romero." (Doc. 62 at 16.)  She further alleges that mere moments later, she was

5    on her way to make a formal discrimination report to HR when she was contacted by Ms.

6    Romero, who called her into a meeting with HR and gave her PIP that Plaintiff allegedly

7    saw as "a formality for her future termination." (*Id.*)

8         Plaintiff cannot sustain a retaliation claim on these facts because receiving a PIP is

9    not an adverse action under these circumstances.  Where a "performance improvement plan

10   [is] non-disciplinary training that did not materially impact [plaintiff's] compensation,

11   terms, conditions, or privileges of employment, it [is] not an adverse employment action."

12   *James v. C-Tran*, 130 Fed. Appx. 156, 157, 2005 WL 1084999 (9th Cir. 2005).  Although

13   Plaintiff might have viewed the PIP as a formality for her future termination, she does not

14   allege that the PIP was disciplinary or otherwise materially impacted her employment.

15   Therefore, there is no adverse action to support her retaliation claim, and Defendant's

16   motion is granted in this respect.[1]

### CONCLUSION

17

18        Accordingly,

19        **IT IS THEREFORE ORDERED** that Defendant ASARCO's Motion for

20   Summary Judgment (Doc. 57) is **granted in part** and **denied in part.**

21        1.     It is denied as to Plaintiff's Count One insofar as it advances a theory of

22   disparate treatment.  However, it is granted as to Plaintiff's Count One to the extent it

23   advances a hostile work environment claim.

24        2.     It is granted as to Plaintiff's Count Two.

25

26

27   _____

[1]  While Plaintiff has sufficiently pleaded an adverse action concerning overtime pay, she
28   does not claim that her overtime requests were rejected because of any protected activity.

**IT IS FURTHER ORDERED** that the Clerk of Court should vacate the Judgment entered at Doc. 67 and re-open the case.

Dated this 22nd day of March, 2023.

G. Murray Snow
Chief United States District Judge

*Order Amended in Conclusion paragraph, pp. 10-11 only.